# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MATTHEW B. MENENDEZ,** *et al*, | } |
| | } |
| **Plaintiffs,** | } |
| | } |
| v. | } Case No.: 2:19-cv-00443-MHH |
| | } |
| **AMERICAN STRATEGIC** | } |
| **INSURANCE CORPORATION,** *et al*, | } |
| | } |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Matthew and Emily Menendez filed this insurance coverage action in state court against defendants American Strategic Insurance Corporation and the Progressive Corporation. (Doc. 1-1). The insurance companies removed the action to federal court on the basis of diversity jurisdiction. (Doc. 1). The plaintiffs have moved to remand their claims to state court, arguing that the insurance companies cannot demonstrate that the amount in controversy exceeds $75,000.00. (Doc. 5).[1] For the reasons discussed below, the Court denies the motion to remand.

---

[1] Mr. and Mrs. Menendez concede that they and the defendants are citizens of different states. (Doc. 1-1, pp. 6-7, ¶¶ 1-4).

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

ASI issued a home insurance policy to Mr. and Mrs. Menendez in June of 2012. (Doc. 1-1, p. 7, ¶ 7). In April of 2018, after discovering that two areas of their home—the kitchen and the front wall—had water damage, Mr. and Mrs. Menendez filed a claim under their policy. In their complaint, the plaintiffs allege that ASI denied the claim. (Doc. 1-1, p. 9, ¶ 17).[2] They filed this lawsuit in the Circuit Court of Jefferson County, Alabama, seeking a declaration that they are entitled to benefits under their policy. (Doc. 1-1). Mr. and Mrs. Menendez also seek damages for breach of contract and bad faith failure to pay their insurance claim. (Doc. 1-1).

The insurance companies timely removed this action to federal court pursuant to 28 U.S.C. § 1332. (Doc. 1). ASI has filed evidence supporting its contention that the amount in controversy exceeds $75,000.00. (Docs. 2-1 through 2-6). Mr. and Mrs. Menendez contend that ASI's evidence is improper and does not demonstrate that the amount in controversy exceeds $75,000.00. (Doc. 5). Mr. and Mrs. Menendez have filed evidence in support of their position. (Docs. 5-2, 5-2, 7-1). Mr. and Mrs. Menendez recently have asserted that they are not alleging

---

[2] In their reply brief in support of their motion to remand, the plaintiffs assert that the insurance companies paid them "$5,000 for mold remediation." (Doc. 7, p. 5).

that they suffered mental anguish, and they are not seeking punitive damages. (Doc. 11).[3]

## II. LEGAL STANDARD

A "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Where, as here, the removing parties rely on 28 U.S.C. § 1332(a) as the basis for removal, there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse, and the amount in controversy must exceed $75,000.") (internal citations omitted). The removing parties bear the burden of demonstrating that federal jurisdiction exists. *Williams v. Best Buy Company, Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

When "the plaintiff has not pled a specific amount of damages," *Williams*, 269 F.3d at 1319 (internal citations omitted), or when, after removal, the plaintiff contests the defendants' assertion of the amount in controversy, *Dart Cherokee*

---

[3] In their motion to remand, the plaintiffs stated: "Plaintiffs seek only the limited cost to repair the water damage arising from the covered loss, plus additional damages for Defendants' bad faith in denying their covered claim." (Doc. 5, p. 6).

3

*Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014), the removing defendants must prove "by the preponderance of the evidence" that the amount in controversy exceeds $75,000. 135 S. Ct. at 553-54. The preponderance of the evidence standard does not require a removing defendant "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010), but a "conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient," *Williams*, 269 F.3d at 1319-20.

In analyzing the amount in controversy, district courts may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations," *Pretka*, 608 F.3d at 754, and may use "judicial experience and common sense," *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). "[E]stimating the amount in controversy is not nuclear science," and "the undertaking is not to be defeated by unrealistic assumptions that run counter to common sense." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014). Moreover, gamesmanship in pleading can neither create nor defeat federal jurisdiction. *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014).

## III. DISCUSSION

In their complaint, Mr. and Mrs. Menendez do not claim a specific amount of damages, and the amount in controversy is not apparent on the face of the complaint. (Doc. 1-1). Mr. and Mrs. Menendez allege that because of the defendants' purported breach of contract and bad faith failure to properly investigate their claim, they (the plaintiffs) suffered "the financial loss of the insurance benefits to which they are entitled," (Doc. 1-1, p. 9, ¶¶ 14, 15, 17, 18, 23, 26), and they "demand judgment against Defendants in such sums as a jury may assess," (Doc. 1-1, p. 10). In their motion to remand, the plaintiffs state that the "sums that a jury may assess" consist of "the damage caused by the covered loss and the attendant bad faith damages." (Doc. 5, p. 2).[4]

To establish that the amount in controversy exceeds $75,000, the insurance companies rely primarily on two pieces of evidence -- an estimate for kitchen repairs of $47,650.00 that Ms. Menendez submitted to ASI on April 27, 2018,

---

[4] As noted, the plaintiffs have represented to the Court that they do not allege that they have suffered mental anguish and that they do not seeking punitive damages. (Doc. 11). Therefore, the Court does not understand the plaintiffs' assertion that they are seeking "the damage caused by the covered loss and the attendant bad faith damages." (Doc. 5, p. 2). If the plaintiffs are not seeking compensatory damages for mental anguish or punitive damages under their bad faith claim, then the breach of contract damages and the damages for bad faith would seem to be identical under Alabama law. Absent mental anguish, the contract injury and the tort injury are identical. The bad faith claim appears to be cumulative to the breach of contract claim because to prove a bad faith failure to investigate or to pay an insurance claim under Alabama law, a plaintiff must prove a breach of contract. *Employees' Benefit Assn. v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998) (citing *National Security Fire & Casualty Co. v. Bowen*, 417 So.2d 179, 183 (Ala.1982)).

(Doc. 2-5, p. 2), and the affidavit of Viki Miles, a lead adjuster for ASI, (Doc. 2-1, p. 2, ¶ 2). Plainly, the $47,650.00 estimate does not exceed the $75,000 jurisdictional threshold, but the estimate concerns only kitchen repairs and does not account for structural and mold damage elsewhere in the house for which Mr. and Mrs. Menendez seek coverage. In her affidavit, Ms. Miles asserts that the structural and mold damage to the front of the house is "more extensive" and "will likely exceed the kitchen repair estimate given the extensive damage to the structural elements of the front of the home." (Doc. 2-1, p. 4, ¶ 8). Ms. Miles describes the repairs as "necessary." (Doc. 2-1, p. 4, ¶ 8).

Mr. and Mrs. Menendez argue that the Court may not rely on the $47,650.00 kitchen repair estimate in evaluating the amount in controversy because the estimate is not limited to water damage repairs but instead reflects the total cost of remodeling the kitchen, a project that was underway when Mr. and Mrs. Menendez discovered the water damage in their house. In their motion to remand, the plaintiffs state: "Plaintiffs were already in the midst of a remodel to their home when they discovered the covered water damage. Plaintiffs do not and have never claimed that their covered losses include entire cost of their remodel." (Doc. 5, p. 6). In their reply in support of their motion to remand, the plaintiffs assert:

> to the extent this construction estimate i[s] offered as evidence of the amount in controversy in this case, it is over-inclusive: Plaintiffs do not and have never suggested, either in their Complaint or in any claim filed with Defendants that Defendants were obligated under the

6

> Policy to pay for granite countertops or any of the other line items in the estimate which are attributable to the renovation and clearly not caused by a covered loss. (Doc. 2-5).

(Doc. 7, p. 3).

The record does not support these assertions. First, in their complaint, the plaintiffs assert that they discovered the covered loss, i.e. the water damage, in April 2018. (Doc. 1-1, p. 8, ¶ 11). If they discovered the water damage after their kitchen remodel was underway, then the remodel had to begin, at the latest, in early April 2018. The estimate from RTS Construction on which the defendants rely to establish the amount in controversy is dated April 27, 2018. Accepting the plaintiffs' allegation concerning the date on which they discovered their loss, the $47,650.00 estimate post-dates the discovery. Common sense and experience tell the Court that estimates for remodeling typically precede the date on which the work of remodeling begins. Therefore, the RTS estimate does not appear to be an estimate for remodeling.

Second, when she spoke to a representative of her insurance company in June of 2018, Ms. Menendez stated that the water damage in her kitchen extended to her kitchen cabinets. (Doc. 2-4, p. 3). She also reported damage to her kitchen floor. (Doc. 2-4, p. 3). The notes from the conversation state: "Mitigation done: . . . They are having to replace her entire kitchen." (Doc. 2-4, p. 3). The notes indicate: "The cabinets have to come off and kitchen countertops. She said they

have to gut." (Doc. 2-4, p. 4).[5] Thus, the plaintiffs have, in fact, suggested that the defendants are "obligated under the Policy to pay for granite countertops or any of the other line items in the estimate." Those line items include cabinets ($18,000), countertops ($12,000), flooring ($2,500), sheetrock ($1,500), and framing repair ($800). (Doc. 2-5, p. 2).

A defendant may submit a "wide range of evidence in order to satisfy the jurisdictional requirements of removal," including "their own affidavits, declarations, or other documentation." *Pretka*, 608 F.3d at 755. Ms. Miles's affidavit is permissible evidence. Given Ms. Menendez's statements concerning the extent of damage to her kitchen attributable to water damage, the $47,650 estimate for kitchen repairs, and Ms. Miles's statement that the cost to repair the structural damage to the front of the home likely will be twice as much as the kitchen repairs, the defendants have established by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.

---

[5] The notes of the conversation indicate that an attorney for Ms. Menendez participated in the call. (Doc. 2-4). Although Ms. Menendez has disclaimed another statement in notes of her conversations with her insurer, namely her estimate that it would cost $75,000.00-$80,000.00 to repair the water damage to her house, (Doc. 5-2, p. 3, ¶ 6), she has not disavowed her statements regarding the extent of the damage to her kitchen. The Court has not considered Ms. Menendez's purported rough estimate of repair costs, but the Court has considered Ms. Menendez's description of the damage and compared that description to the April 2018 RTC estimate. Ms. Menendez's statements offered by the defendants are not hearsay. Fed. R. Evid. 801(d)(2). ASI's notes regarding Ms. Menendez's statements likely are admissible under Fed. R. Evid. 803(6). *See generally Longcrier v. HL-A Co.*, 595 F.Supp.2d 1218, 1223 (S.D.Ala.2008) ("The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial.") (citations omitted).

## IV. CONCLUSION

The parties are completely diverse, and for the reasons described above, the Court finds that the defendants have established by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. The Court has subject matter jurisdiction over the Menendez's claim. Accordingly, the Court **DENIES** the Menendez's motion to remand.

**DONE** and **ORDERED** this June 14, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE